NELSON ET AL. *v.* THE BOARD OF ZONING APPEALS ETC., ET AL.

[No. 29,872. Filed November 25, 1959. Rehearing denied January 5, 1960.]

214

*Leo X. Smith*, and *John F. Watkins*, both of Indianapolis, for appellants.

*Yaeger & Tinder, Miller & Miller, John G. Tinder, Stanley B. Miller*, both of counsel, all of Indianapolis, and *Charles S. White*, Assistant City Attorney, Board of Zoning Appeals, City of Indianapolis, of counsel, for appellees.

ARTERBURN, C. J.—This case comes to us on petition to transfer from the Appellate Court under §4-215, Acts 1901, ch. 247, §10, p. 565, Burns' 1946 Replacement. See 158 N. E. 2d 167 for opinion of the Appellate Court.

This is an appeal from a judgment rendered by the Superior Court Room 2 of Marion County in an action brought by appellants for a writ of certiorari to review a decision of the Board of Zoning Appeals of the City of Indianapolis. The Board granted a variance from the zoning ordinance of the city to authorize the construction of a sixteen-family unit apartment house in an area restricted by the zoning ordinance to one- and two-family dwelling houses, designated as a U-1 District.

The Superior Court affirmed the judgment of the Board of Zoning Appeals, from which judgment this appeal is taken.

The appellants are owners of real estate adjacent to and in the vicinity of the lot on which the variance was granted.

The appellants filed their motion for a new trial. The assignment of errors, in addition to the specification that the court erred in overruling the motion for new trial, sets out eight other specifications which are not proper as independent assignment of errors. However, the questions raised are covered under appellants' motion for new trial, and that question is: did the Board of Zoning Appeals have the power and authority to grant a variance in the residential district here involved for a sixteen-unit apartment building under the zoning ordinance of the City of Indianapolis?

The pertinent parts of the zoning ordinance of the City of Indianapolis with reference to the granting of variances read as follows:

"11-123. Authority and procedure of board of zoning appeals to determine variances and exceptions and grant permissions.— (a) Authority of the Board. The board of zoning appeals shall have the power and authority in specific cases, after due public notice and hearing and subject to such conditions and safeguards as the board may prescribe, to protect the appropriate use of neighboring property and to serve the public convenience and welfare, as follows:

"(1) To vary any provisions of this chapter in harmony with its general purpose and intent so that the public health, safety and general welfare may be secured and substantial justice done, where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provisions of this chapter.

• • •

"(4) To permit in a district any use or building deemed by the board to be in general keeping with and appropriate to the uses or buildings authorized in such district or existing in neighboring property, such as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this chapter will result in unnecessary hardship, and so that the spirit of this chapter shall be observed and substantial justice done."

The power of the Board of Zoning Appeals to grant variances from the fixed uses in any district is dependent upon the foregoing provisions of the zoning code. The appellants urge that the facts show no "practical difficulties or unnecessary hardships" in this case. We review the evidence before the board and trial court merely to determine whether or not there are facts to support the finding and determination and not for the purpose of determining the merits of the discretion exercised by the administrative board. We must indulge all reasonable presumptions in favor of the determination upon a review. If the board acted within the scope of its authority under the zoning ordinance, we may not disturb the finding and determination.

Whether the decision of the trial court is contrary to law or is not sustained by sufficient evidence depends upon whether or not the finding and determination of the administrative board was contrary to law and was not supported by substantial evidence. In this endeavor we must also decide whether or not the determination was contrary to law, namely, the zoning ordinance. *Pub. Serv. Comm. of Ind. et al.* v. *Ind. Tel. Corp.* (1957), 237 Ind. 352, 146 N. E. 2d 248; Flanagan, Wiltrout and Hamilton's Indiana Trial

and Appellate Practice, §§2783-2790; Acts 1947, ch. 174, §77, p. 571, being §53-778, Burns' 1951 Repl.; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. 2d 399; *Board of Zoning Appeals* v. *Waintrup* (1935), 99 Ind. App. 576, 193 N. E. 701; *Smith* v. *Lippman* (1944), 222 Ind. 261, 53 N. E. 2d 157.

At the hearing before the Board of Zoning Appeals there were presented exhibits, drawings and plans to the board of the proposed apartment house and its location. The proposed building was to be located on a vacant lot at the intersection of 36th Street and Central Avenue in the City of Indianapolis. The board heard testimony to the effect that the neighborhood in question was becoming less of a residential section and more commercialized; that the College Life Insurance Company had a large office building on Central Avenue just north of the intersection of 34th Street, and that an apartment building was located on the same street and block as the lot in question; that a Jewish home and school were south of the lot under consideration facing Central Avenue; that the petitioners were suffering hardship because the premises involved had been vacant for many years, and there was no chance to build anything worthwhile on it. Taxes were being paid, with no opportunity under present zoning restrictions to make the lot produce any revenue to pay taxes.

The apartment building was to be constructed of brick and stone, completely air-conditioned and the units would rent for $160. to $180. a month; that the building would be set back 50 feet rather than 35, as proposed in the plan. On the other side, there was heard evidence with reference to many petitions for variances for commercial purposes which had been filed and denied in that area during the past ten years; that there would be serious traffic problems if the variance

was granted and that the property values would be destroyed.

The board granted the petition for a variance on condition that the buildings be set back 50 feet, stating that the proposed building "will not be detrimental to the public welfare and will not substantially or permanently injure the appropriate use of the neighboring property."

The appellants contend that the property owners in this case should have sought a change in the zoning ordinance to permit an alien use in the residential district, and that the granting of the permission to place an apartment building within the residential section is beyond the authority of the zoning board under its power to grant variances. Appellants rely upon and place great stress upon the case of *Antrim et al.* v. *Hohlt et al.* (1952), 122 Ind. App. 681, 108 N. E. 2d 197, urging that the factual situation for all practical purposes is identical. In that case a request for a variance was made to construct an apartment building in the same residential district. However, in that case the proposed building was nearly five times greater than that of the present proposed apartment (83 units compared with a 16-unit building). The vacant lot in the Antrim Case was more than seven times larger in area than the vacant lot in this case. A number of years have elapsed since the Antrim Case was decided and there is evidence in the case before us that the neighborhood was changing and becoming more commercialized. The Antrim Case recognizes the authority of the zoning board to grant variances, but holds that in that particular case an apartment of the size and character proposed "would constitute a substantial change in the master zoning plan."

There is no fixed categorical limitation on what use may or may not be the subject of a variance. The controlling factors in each case are the surrounding circumstances and facts for the determination of the administrative board. We have held a commercial or business use, including a filling station, may properly be the subject of a variance in a residential district under proper conditions. *Town of Homecroft* v. *McBeth* (1958), 238 Ind. 57, 148 N. E. 2d 563; *City of South Bend* v. *Marckle* (1939), 215 Ind. 74, 18 N. E. 2d 764.

It is true that where the proper surrounding circumstances do not exist for a variance as provided in the zoning code, such as unnecessary hardship, public health and safety, etc., a change in the zoning ordinance itself must be obtained before an alien use is permitted in a particular zoned district.

In *City of E. Chicago* v. *Sinclair Refining Co.* (1953), 232 Ind. 295, 111 N. E. 2d 459, this court said (at pp. 307-309):

"Each zoning case must be decided upon its own factual situation. (Cases cited.)

"The application of the unnecessary hardship doctrine is not governed solely by the size of the area or the particular piece of property upon which the unnecessary hardship is imposed. No single factor determines what constitutes unnecessary hardship, but all relevant factors, when taken together, must indicate that the special conditions are such that the property affected cannot reasonably be put to a conforming use because of the limitation imposed upon it by reason of the classification in which it is placed by the terms of the ordinance. (Cases cited.)

"The Board of Zoning Appeals is authorized by statute to grant variances from the terms of the

ordinance where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, so long as such action is not contrary to the public interest and the spirit of the ordinance is preserved and substantial justice is done. Whether or not an unnecessary hardship exists is a question of fact to be determined by the Board of Zoning Appeals."

In view of the facts presented before the zoning board here we cannot say that it had no factual background before it as authority for granting the variance for this comparatively small apartment building, set back fifty feet from the street, with off-street parking facilities. Because of the size of the building, unlike the Antrim Case, it would not dominate the area. This building is to be erected in a section which the zoning board, from the evidence, had a right to conclude was partially commercialized at the time. We cannot say, as was done in the Antrim Case, that the proposed variance would "constitute a substantial change in the master zoning plan." Coupled with this were facts showing the lot had been vacant for some time and taxes were being paid thereon without any possibility under present zoning restrictions to make it revenue-producing. In *Town of Homecroft* v. *McBeth*, *supra*, we quoted with approval from *Dowsey* v. *Village of Kensington* (1931), 257 N. Y. 221, 177 N. E. 427, 86 A. L. R. 642:

"'An ordinance which *permanently* so restricts the use of property that it cannot be used for any reasonable purpose goes, it is plain, beyond regulation, and must be recognized as a taking of the property. The only substantial difference, in such case, between restriction and actual taking, is that the restriction leaves the owner subject to the burden of payment of taxa-

tion, while outright confiscation would relieve him of that burden.' "

The Board of Zoning Appeals, under the zoning code, is authorized to grant variances "where there are practical difficulties or unnecessary hardships" or "in general keeping" with uses "existing in neighboring property such as will not be contrary to the public interest." These provisions of the zoning code leave a discretion to the board where facts are presented within the context. Where such evidence is presented before the board, it has considerable latitude in the exercise of such discretion. In such case we cannot control the determination or discretionary action of an administrative board. *City of E. Chicago* v. *Sinclair Refining Co., supra; Otto* v. *Steinhilber* (1939), 282 N. Y. 71, 24 N. E. 2d 851; *Keller* v. *Council Bluffs* (1954), 246 Ia. 202, 66 N. W. 2d 113; 1 I. L. E., Adm. Law, §78, p. 207.

It is our judgment that the Board of Zoning Appeals had the power and authority within its discretion to grant the variance in question here.

The judgment of the trial court is affirmed.

Jackson, Bobbitt and Landis, JJ., concur.

Achor, J., not participating because of illness.

NOTE.—Reported in 162 N. E. 2d 449.