PRO–ECO, INC., Plaintiff–Appellee,

v.

BOARD OF COMMISSIONERS OF JAY COUNTY, INDIANA, Defendant–Appellant.

No. 90–3336.

United States Court of Appeals, Seventh Circuit.

Argued May 8, 1991.

Decided Feb. 7, 1992.

As Amended Feb. 7, 1992.

David V. Miller (argued), Cedric Hustace, Robert J. Dodson, Bowers, Harrison, Kent & Miller, Evansville, Ind., for plaintiff-appellee.

Rosemary G. Spalding (argued), Price & Shula, Indianapolis, Ind., Bradley K. Burkett, Whiteman, Shappell & Burkett, Portland, Ind., for defendant-appellant.

Before WOOD, Jr.,* COFFEY and KANNE, Circuit Judges.

KANNE, Circuit Judge.

In 1989, plaintiff Pro–Eco, Inc. ("Pro–Eco") prepared to purchase a farm in Jay County, Indiana, and transform it into a sanitary landfill. When the Board of Commissioners of Jay County, Indiana ("the Board") learned of Pro–Eco's plans, it adopted an ordinance barring anyone from developing any property as a sanitary landfill, until the Board was able to enact a comprehensive land use plan. The ordinance gave the Board three years to adopt such a plan. Pro–Eco then brought this suit alleging that the Board violated Indiana law as well as several provisions of the Constitution of the United States. Based upon a stipulated set of facts, the district court granted summary judgment for Pro–Eco, 776 F.Supp. 1368, on the case.

* Judge Wood, Jr., assumed senior status on Jan. 16, 1992, which was after oral argument in this

ground that the Board's action in passing the moratorium was an unauthorized exercise of zoning power under Indiana law. The Board appeals. We affirm.

Pro–Eco is an Indiana Corporation which came to Jay County with an interest in developing a parcel of land for use as a sanitary landfill. In September 1988, Pro–Eco purchased an option on a Jay County farm for use as a possible site for its landfill. Pro–Eco authorized expenditures for preliminary drilling and testing on the property to determine its suitability for use as a landfill.

Between October 1988 and early 1989, Pro–Eco hired an engineering firm to gather the information necessary to allow it to file applications with the Indiana Department of Environmental Management ("IDEM"), which has authority to establish state-wide criteria for the environmentally safe operation of landfills. In November 1988, Pro–Eco and its engineers met with officials from IDEM to inform them of its intention to operate a landfill. From November 1988 to March 1989, Pro–Eco continued testing the Jay County property to prepare for a permit application. In February 1989, Pro–Eco renewed its option to purchase the Jay County farm. The record reflects that prior to March 1989 Pro–Eco spent $214,349 on planning the application and testing the site.

In early 1989, the Jay County Commissioners became aware of Pro–Eco's activities. In several meetings in February and March the Board discussed its concerns with the location of landfills in Jay County. On March 20, 1988, the Board adopted Ordinance No. 1989–1, § 1 of which prohibits the establishment of new sanitary landfills in Jay County until: (1) the adoption of an areawide land use management ordinance containing provisions for the regulation of sanitary landfills within Jay County; or (2) the expiration of three years from the date of the Ordinance.[1] Section 2 of the ordinance created an Area Land Use Management Committee and empowered the Committee to study Jay County's need for area-wide planning specifically focusing on sanitary landfills. Section 2 allowed the Committee 180 days to complete its task. The ordinance included a finding by the Board that "serious, permanent and irreversible environmental damage and unnecessary endangerment of public health, safety and welfare of the citizens of Jay County, Indiana, may occur by permitting the construction and operation of any new public or commercial sanitary landfills ... prior to the adoption and implementation of proper controls regulating the location, construction and operation of public or commercial sanitary landfills."

As of March 19, 1990, when the parties submitted the joint submitted facts to the district court, the Board had not adopted any comprehensive land use plan. At that time, the only proposed plan disclosed by Jay County was no longer being considered by the Jay County Advisory Planning Commission.

After the ordinance was passed, Pro–Eco suspended its efforts to prepare an application to IDEM. On May 16, 1989, Pro–Eco purchased the Jay County farm. Shortly thereafter, Pro–Eco brought suit against the Board alleging that the ordinance violated Indiana law as well as several provisions of the United States Constitution.

After pre-trial proceedings, both parties moved for summary judgment. The district court granted Pro–Eco's motion and denied the Board's motion on the ground that the Board acted contrary to Indiana law in enacting the ordinance. The district court found that the ordinance was a zoning ordinance on the ground that it was "an attempt by the Board to regulate the use of a piece of property." The district court rejected the Board's contention that the ordinance could not be a zoning ordinance because it did not regulate the county by districts.

The district court further held that because the Board enacted the ordinance without first enacting, pursuant to statute, a comprehensive statutory plan, the Board had violated Indiana law. *See* IND.CODE

---

1. At oral argument counsel for the Board conceded that the Board had the power to vote to extend the moratorium, although it might be subject to challenge.

ANN. § 36–7–4–601(a) (West Supp.1991). The district court also found that Indiana's "Home Rule" act, IND.CODE ANN. § 36–1–3–6(a) (West 1983) did not apply to shield the actions of the Board.

We review a grant of summary judgment *de novo*. *First Wisconsin Trust Co. v. Schroud,* 916 F.2d 394, 398 (7th Cir.1990). Where, as here, no issues of material fact exist, "we determine whether the moving party is entitled to judgment as a matter of law." *Id.;* FED.R.CIV.P. 56(c). In examining a grant of summary judgment, we must also " 'view the record and all inferences drawn from it in the light most favorable to the party opposing the motion.' " *Kreutzer v. A.O. Smith Corporation,* 951 F.2d 739, 743 (7th Cir.1991), (quoting *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990)).

As the district court recognized, the principal issue is whether the ordinance passed by the Board is a zoning ordinance. If the ordinance enacted by the Board is a zoning ordinance, it is clearly in violation of Indiana law. Section 36–7–4–601(a) (West Supp.1991) provides that:

> The legislative body having jurisdiction over the geographic area described in the zoning ordinance has exclusive authority to adopt a zoning ordinance under the 600 series. However, *no zoning ordinance may be adopted until a comprehensive plan has been approved* for the jurisdiction under the 500 series of this chapter. (Emphasis added).

Indiana courts have strictly construed the powers conferred by the zoning statute. In *K.G. Horton & Sons, Inc. v. Board of Zoning Appeals of Madison County,* 235 Ind. 510, 135 N.E.2d 243 (Ind.1956), the court held that, under a prior version of the Indiana statute at issue here, a temporary zoning ordinance was invalid because the defendant Board of Zoning Appeals had not previously enacted a master plan.

In *Horton,* the county adopted an interim zoning ordinance which was to remain in effect until the adoption of a comprehen-

sive zoning ordinance but was not to have a duration in excess of one year. Each year, until 1955, the Board readopted the ordinance. The developer challenged the 1955 extension of the ordinance. In 1947, the Zoning Act became effective.[2] Under that act a county could not enact a zoning ordinance until the final report of the plan commission had been received by the Board of County Commissioners. The defendant county never adopted a comprehensive plan. The court held that the interim ordinance adopted in 1955 was void because "it was beyond the statutory power of the Board of Commissioners," *Horton,* 135 N.E.2d at 246, although it noted that the interim ordinance adopted before the effective date of the Zoning Act was valid. The court stated that the readoption of the interim zoning ordinance in 1955 without a master long range plan did not comply with the 1947 Zoning Act. The court stated that "upon the expiration of the ordinance, on April 1, 1948, it could not be readopted except as a part of a master long range plan under the procedures prescribed by the 1947 Zoning Act." *Id.*

*Hundt v. Costello,* 480 N.E.2d 284 (Ind. Ct.App.1985) is also consistent with the holding of *Horton.* In *Hundt,* the defendant city extended its jurisdictional area to encompass a site for a landfill. *Id.* at 285. At that time, the city had adopted a master plan and a zoning ordinance. The city then amended its zoning ordinance to permit the landfill. The court upheld the amendment of the ordinance, citing the public interest in the creation of new sanitary landfills. The court noted that it would have held the amendment void if the city had not had a master plan in effect at the time of the amendment. *Id.*

Other Indiana decisions are consistent with *Horton* as well. In *City of Crown Point v. Lake County,* 510 N.E.2d 684 (Ind.1987), the court noted that a comprehensive land use "plan is carried out through local zoning ordinances." *Id.* at 686 (citing, IND.CODE ANN. § 36–7–4–601–

---

**2.** Section 56 of the 1947 Zoning Act is the predecessor of IND.CODE § 36–7–4–601(a). 1947 Indiana Acts, Ch. 174, § 56.

614 (Burns 1986 Supp.)). *See also South Bend Transp. v. City of South Bend,* 428 N.E.2d 217, 225 (Ind.1981) (following *Horton* to state that boards of county commissioners "possess only such powers as have been granted expressly by statute and those which must be necessarily implied to execute some expressed power"). Thus, the Board must lose if the moratorium is a zoning ordinance.

■ Under Indiana law, a zoning ordinance is "an ordinance adopted under the 600 series of I.C. 36–7–4 or under prior law." IND.CODE ANN. § 36–7–1–22 (West Supp.1991). The Board argues that the ordinance is not a zoning ordinance because it does not regulate the use of any particular piece of property. Stated another way, the Board claims that the terms "zoning" and "regulating" have different meanings under Indiana law. The Board claims that, as applied to local governments, the term "regulate" includes "license, inspect, or prohibit." IND.CODE ANN. § 36–1–2–15 (West 1983). The Board claims that " 'zoning' is the separation of a municipality into districts or 'zones' and the regulation of each district as to the structure, nature and use of buildings and land." 5 P. Rohan, *Zoning and Land Use Controls* § 37.01[1]. The Board therefore claims that the ordinance cannot be a zoning ordinance because it does not divide the county into various zones.

We do not disagree with the various definitions of zoning cited by the Board. We conclude, however, that the Board's version of the definition of zoning is inconsistent with Indiana's statutory framework for zoning because it is far too narrow to do justice to the plain meaning of Indiana's zoning statutes. Another authority defines zoning as:

> * * * the regulation by districts of the building development and uses of property, and its essence is a territorial division according to the character of land and structures and their peculiar suitability for particular uses and the uniformity of use within the division. The essential object of zoning regulations is to stabilize property uses and preserve the char-

acter of neighborhoods, and they may be intended to guide the future development of uses of land in certain areas and to protect such areas during transition periods in connection with anticipated future development.

30 I.L.E., *Zoning,* § 1, p. 635 (1960).

In *Misner v. Presdorf,* 421 N.E.2d 684, 686 (Ind.Ct.App.1981), the court noted that "the ultimate purpose of zoning regulations is to confine certain classes of uses and structures to certain areas." Under a proper definition of zoning, such as the I.L.E. definition, a regulation, enacted after the preparation of a master plan pursuant to IND.CODE ANN. § 36–7–4–601(a) (West Supp.1991), which banned the construction of any landfills, or airports, or manufacturing plants in an entire county would certainly be a zoning ordinance. Thus, we cannot agree with the Board that a zoning ordinance must divide a county into districts.

The ordinance enacted by the Board is consistent with the definition of zoning in several other ways. First, in § 1, it attempts to permit nonconforming uses. *See Misner,* 421 N.E.2d at 686. The ordinance also stabilizes property uses in Jay County by preventing the creation of new sanitary landfills, and "preserves the character of existing neighborhoods." 30 I.L.E., *Zoning,* § 1. It also protects the entire county "during transition periods in connection with anticipated future development." *Id.* The Board itself admits that the ordinance is an "emergency, interim measure" designed to "preserve the status quo."

If we were to accept the Board's position it would allow the Board to frustrate the Indiana statutory framework for orderly zoning by enacting a temporary and unspecific moratorium whenever the Board perceived that an individual planned an undesirable use. Thus, the district court correctly concluded that the ordinance enacted by the Board was a zoning ordinance.

■ Furthermore, the Board's action was not protected by Indiana's Home Rule statute. A provision of that statute, IND. CODE ANN. § 36–8–2–4 (West 1983) authorizes local governing units to "regulate ...

use ... of property, that might endanger the public health, safety or welfare." By its own terms the Home Rule act does not apply to the moratorium issued by the Board. It provides that: "if there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise the power must do so in that manner." IND.CODE ANN. § 36–1–3–6(a) (West 1983). *See also City of Crown Point*, 510 N.E.2d at 686 (noting that the zoning statutes, such as IND.CODE ANN. §§ 36–7–4–503 (West Supp. 1991) and 36–7–4–601(b) (West Supp.1991), and not the Home Rule Act, IND.CODE ANN. § 36–1–3–4 (West 1983), grant counties the authority to regulate landfills). Thus, it is quite clear that a zoning ordinance is not governed by the Home Rule statute.

Because we conclude that the moratorium on new landfills enacted by the Board violated Indiana zoning statutes and is therefore void, we need not address Pro–Eco's other arguments. The district court properly granted summary judgment for Pro–Eco.

We AFFIRM the judgment of the district court.