607 A.2d 76
**ISLAND FINANCIAL, INC.**
v.
**B. George BALLMAN, et al.**
No. 947, Sept. Term, 1991.
Court of Special Appeals of Maryland.
May 28, 1992.

Ronald S. Deutsch and Jacob Geesing, Silver Spring, argued (Auerbach & Deutsch, P.A., on the brief), for appellant.

Mark L. Corrallo, Gaithersburg, argued (Wendy D. Pullano, Elizabeth A. White and Conroy, Ballman & Dameron, Chtd., on the brief), for appellees, Ballman and Turner.

Arthur C. Elgin, Jr., Washington, D.C., argued (Jackson & Campbell, P.C., on the brief), for appellee, Prosper Osei–Wusu.

Argued before WILNER, C.J., and WENNER and FISCHER, JJ.

FISCHER, Judge.

Appellant, Island Financial, Inc. (Island), appeals from a decision of the Circuit Court for Prince George's County denying Island's motion to vacate the ratification of a foreclosure sale.

On July 19, 1989, Island loaned money to Gregory S. Rogers and Yolanda A. Rogers, husband and wife. The loan was secured by a second deed of trust on 5 Daimler Drive in Seat Pleasant, Maryland. Payments on the second deed of trust fell in arrears, and on November 7, 1990, appellant's trustees initiated a foreclosure proceeding in the Circuit Court for Prince George's County. In the process of foreclosing, the trustees learned that the property had already been sold by appellees, B. George Ballman and Sherri E. Turner, substitute trustees for Trustbank Savings, F.S.B., as a result of the foreclosure of the first deed of trust.

Island received no notice of the sale and was, therefore, unable to attend the sale or otherwise endeavor to protect its interest in the property. Island moved to intervene in the foreclosure proceeding and, on December 5, 1990, permission to intervene was granted. The court auditor filed his account of the sale which showed a surplus of only $321.33 payable to Island. Subsequently, Island filed ex-

ceptions to the auditor's account and moved to vacate the ratification of the sale. After a hearing, the circuit court denied Island's motion to vacate and overruled its exceptions. This appeal followed, and Island raises one issue for our consideration:

Did the circuit court's action in denying Island's motion and overruling its exceptions deprive Island of property in violation of the due process clause of the Fourteenth Amendment to the United States Constitution?

Appellees aver that they correctly followed the procedures set forth in Md.Rule W74 regulating foreclosure sales. In addition, appellees contend that Island itself did not exercise due diligence, because it failed to record, in accordance with the provisions of Md.Real Prop.Code Ann. § 7–105(c), a request for notice of foreclosure. Section 7–105(c) states:

(c) *Notice to holder of subordinate mortgage, etc.*—(1) The holder of a superior recorded mortgage or deed of trust shall give written notice of any proposed foreclosure sale to the holder of any subordinate recorded mortgage, deed of trust, or other subordinate recorded or filed interest, including a judgment, in accordance with the requirements of the Maryland Rules applicable to the giving of notice to the mortgagor or grantor of the mortgage or deed of trust being foreclosed, if the holder of the subordinate interest has recorded in the land records office of each county where the property is located a request for notice of sale at least 30 days prior to the date of a foreclosure sale which is actually held. A request for notice of sale shall:

(i) Be recorded in a separate docket or book which shall be indexed under the name of the holder of the superior mortgage or deed of trust and under the book and page numbers where the superior mortgage or deed of trust is recorded;

(ii) Identify the property in which the subordinate interest is held;

(iii) State the name and address of the holder of the subordinate interest; and

(iv) Identify the superior mortgage or deed of trust by stating:

1. The names of the original parties to the superior mortgage or deed of trust;

2. The date the superior mortgage or deed of trust was recorded; and

3. The office, docket, or book, and page where the superior mortgage or deed of trust is recorded.

Island admits that it failed to comply with § 7–105(c)(1) and that appellees complied with the Md.Rules with respect to the foreclosure. Island's contention is that the Fourteenth Amendment requires that adequate notice and an opportunity to be heard must be provided before any state action may be taken to deprive one of his or her property.

The Fourteenth Amendment provides in part that no state shall "deprive any person of life, liberty or property, without due process of law." The Supreme Court in recent decisions has tempered the harshness of foreclosure and tax sales by requiring that the states protect an individual's property interests through procedural due process. The Fourteenth Amendment is implicated when there is "a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974). The appellees do not contest that State action is involved. *See McCann v. McGinnis*, 257 Md. 499, 505, 263 A.2d 536 (1970) (citing *Warfield v. Dorsey*, 39 Md. 299, 307 (1874)), in which the Court of Appeals stated, "The court is the vendor in the case of a sale under the power contained in a mortgage, just as it is a vendor in any other chancery sale."

In *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the Court set out a two part analysis to determine whether an individual's

property interest had been violated without due process. The first prong of the test is to determine whether the party holds a legally protected property interest and the second prong requires a balancing of needs between the interest holder's right to notice and the burden of providing that notice.

Although *Mennonite* involved a tax sale, the language has been read broadly to encompass foreclosure sales. In *Mennonite*, the Mennonite Board of Missions held a purchase money mortgage on Indiana property on which the mortgagor failed to pay real property taxes. Under Indiana law, before the property was sold at a tax sale, notice was published for three weeks, posted in the county courthouse and a certified mail copy of the notice was sent to the owner. As mortgagee, Mennonite Board of Missions was not entitled to notice under the statute and subsequently was not notified of the tax sale. Under the statute, after two years free of any interest claims on the property, the tax sale purchaser obtained the property free and clear of all encumbrances, even prior recorded mortgages.

The Supreme Court in *Mennonite* held that failure to give the mortgage holder actual notice of the pending tax sale violated procedural due process. The Supreme Court relied on its earlier decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), to illustrate the proper form of required notice. In *Mullane*, 339 U.S. at 314, 70 S.Ct. at 657, the Court stated that procedural due process protection requires a State to provide "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Specifically in *Mullane*, 339 U.S. at 318, 70 S.Ct. at 659, the Court found that published or posted notice did not meet the standard of procedural due process when the address of an interested party is reasonably ascertainable. Under *Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711, procedural due process protects "persons" holding a legally protected property interest by requiring actual or mailed

notice of a proceeding if the person's name and address are "reasonably identifiable."

■ Our first task is to determine whether Island, an inferior lienholder, has a legally protected property interest under *Mennonite*. There is no doubt that a first mortgage holder is protected. *Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711 ("a mortgagee clearly has a legally protected property interest"). Second mortgagees also have a significant, constitutionally protected property interest. *See Fuentes v. Shevin*, 407 U.S. 67, 82, 92 S.Ct. 1983, 1995, 32 L.Ed.2d 556 (1972); *Federal Deposit Ins. Corp. v. Morrison*, 747 F.2d 610, 614 (11th Cir.1984). In *Davis Oil Co. v. Mills*, 873 F.2d 774 (5th Cir.1989), Davis was a mineral lessee whose interest was extinguished by a mortgage foreclosure sale. The Fifth Circuit Court of Appeals held, "The termination of Davis' lease by FNB's foreclosure and the subsequent seizure and sale of the subject property 'deprived' Davis of a legally protected property interest within the meaning of the fourteenth amendment." *Davis Oil*, 873 F.2d at 787. Other states similarly construed the language of *Mennonite* to encompass foreclosure actions. *See Dossett v. Hub City Bank & Trust Co.*, 546 So.2d 597 (La.App. 3 Cir.1989); *City of Boston v. Shirley James*, 26 Mass.App.Ct. 625, 530 N.E.2d 1254 (1988). It is clear that Island's interest is protected, because the ratification of the foreclosure sale has the ultimate effect of nullifying Island's interest in the property (Island would receive only $321.33 of its loaned money)—the same effect that the tax sale in *Mennonite* had upon the mortgagee's interest.

The second prong of the *Mennonite* test is to determine whether the foreclosing party would be unfairly burdened with providing notice to holders of subordinate property interests. The Court in *Mennonite*, 462 U.S. at 800, 103 S.Ct. at 2712, stated, "[N]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and

address are reasonably ascertainable." The mortgage on file in *Mennonite* identified the mortgagee as "MENNON-ITE BOARD OF MISSIONS a corporation, of Wayne County, in the state of Ohio", but the corporation's address was not provided. The Court, however, concluded that it would not have been a difficult task to find the address and to mail notice of the proceeding to the mortgagee. *Mennonite,* 462 U.S. at 798 n. 4, 103 S.Ct. at 2711 n. 4. It is also apparent that it is not a difficult task to locate a junior lienholder, such as Island, which has corporate offices or a place of residence within the State of Maryland. A simple title scan from the time that the property was acquired by the current owner to the initiation of the foreclosure proceedings would have provided notice of Island's interest in the property. Also, Island's name and address appear on the top page of the deed of trust which is recorded in the land records of Prince George's County. Certainly, this process is not oppressive to the foreclosing party in terms of the amount of time, money or effort expended.

Appellees argue that the burden of providing notice to Island is equivalent to the burden of providing notice to a junior mineral lessee as described by the Fifth Circuit in *Davis Oil.* The *Davis* court described the search to discover the junior mineral lessee as requiring the creditor to "wend its way through a potentially complex maze of leases and assignments in order to identify interested parties ... [and] concluded that under the circumstances 'reasonable diligence' did not require that FNB search the conveyance records to ascertain the identities of the mineral lessees." *Davis Oil,* 873 F.2d at 790. The Fifth Circuit held that such a record search heavily burdened the creditor, and the court did not want to discourage creditors from bringing foreclosure actions. The *Davis* court, however, noted that "a reviewing court could easily conclude that the search of property records required to identify a third possessor or second mortgagee is less burdensome than that required to identify parties with mineral interests in the same land." *Davis,* 873 F.2d at 790 n. 24. We do not believe that the

title scan required to discover junior mortgage holders of property located in the State of Maryland is nearly as lengthy and time consuming as that described in the search required to discover a junior mineral lessee in Louisiana. Consequently, the court's holding in *Davis* is not persuasive with respect to the case under consideration.

*Mid–State Homes, Inc. v. Portis*, 652 F.Supp. 640 (W.D.La.1987), involved a second mortgagee that brought suit against the first mortgagee of the property for failing to give adequate notice to the second mortgagee of the pending foreclosure action. Upon foreclosure, the second mortgagee lost its interest in the property. The District Court of Louisiana held that the principles of due process extend to second mortgagees and entitle them to adequate notice and an opportunity to be heard before its property interest is impaired. The court followed the *Mennonite* analysis and concluded that the first mortgagee provided adequate notice to the second mortgagee. The court reasoned that since the second mortgagee's address was not "reasonably ascertainable," it was not unconstitutional for the first mortgagee to provide only constructive notice of the foreclosure action. The court determined that the identity of the second mortgagee was not reasonably ascertainable since it was not named in the body of the mortgage (the body of the document still referred to the previous mortgage holder), and its name only appeared at the top and bottom of the mortgage in the place where the previous mortgage holder's name had been crossed-out. Also, the court noted that the document did not contain the second mortgagee's address nor was the mortgagee listed in the city or phone directories of that area. The court also reasoned that the second mortgagee was constitutionally protected by the statute that required interest holders in property to file a request for notice. This holding, however, was expressly overruled in *Davis*, 873 F.2d at 788 ("to the extent that the district court's holding [in *Mid–State Homes* ] ... implies that [required notice statute] would be constitutionally adequate as the sole determinant of parties

entitled to notice of the seizure of property, we expressly reject that reasoning").

Although Island has a protected interest under *Mennonite*, appellees aver that Island may not assert this right, because it failed to submit a request for notice of sale as required under Md.Real Prop.Code Ann., § 7–105(c). The Supreme Court did not specifically address this issue in *Mennonite* even though Indiana had recently enacted a request for notice of sale statute similar to Section 7–105(c):

> Indiana Code Section 6–1.1–24–4.2 (1982), added in 1980, provides for notice by certified mail to any mortgagee of real property which is subject to tax sale proceedings, if the mortgagee has annually requested such notice and has agreed to pay a fee, not to exceed $10, to cover the cost of sending notice. Because the events in question in this case occurred before the 1980 amendment, the constitutionality of the amendment is not before us.

*Mennonite*, 462 U.S. at 793 n. 2, 103 S.Ct. at 2708 n. 2.

After *Mennonite*, however, states with similar statutes addressed this issue. The Court of Appeals of Indiana, in *Reeder & Associates v. Locker*, 542 N.E.2d 1371 (Ind.App. 3 Dist.1989), decided that even though the mortgagee in a tax foreclosure proceeding had not followed the procedures under the request for notice of sale statute, the mortgagee was nonetheless denied due process because he did not receive actual notice of the sale through the mail or through personal service. The Indiana court followed *Mennonite* which provided for "actual notice" to an interested party if the party's address was "reasonably ascertainable." *Mennonite*, 462 U.S. at 799, 103 S.Ct. at 2711. The Indiana court ruled that the statute did not protect the mortgagee's due process rights and that "after *Mennonite* a mortgagee is required to receive actual notice of a tax sale unless the mortgagee's address is not reasonably identifiable." *Reeder*, 542 N.E.2d at 1373.

The New Jersey Supreme Court, in *Jefferson Tp. v. Block 447A, Lot 10*, 228 N.J.Super. 1, 548 A.2d 521 (1988), held

that a tax certificate holder was denied due process when he was not given actual notice of a tax foreclosure sale. New Jersey also has a statute that provides for notice if an interested party files a request with the tax collector stating his name and address. The court ruled that the statute did not satisfy due process since the name and address of the certificate holder was easily ascertainable in another record book and that "a person's entitlement to the notice required by due process cannot be conditioned on the requirement that he request it." *Jefferson Tp.*, 228 N.J.Super. at 8, 548 A.2d 521.

The Fifth Circuit held that a Louisiana statute "acts only to supplement Louisiana's preexisting constructive notice scheme in Louisiana foreclosure actions. The provision gives property owners, whose identities a reasonably diligent, responsible state actor could not reasonably ascertain, the opportunity to request such notice and thereby become ascertainable." *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir.1989).

Although Massachusetts does not have a similar request for notice of sale statute, the Appeals Court was unpersuaded when the city, seeking to foreclose rights of redemption after a tax sale, argued that the property owners bore the duty of leaving a forwarding address. The court concluded, "[S]hifting of responsibility is impermissible even when the persons deprived of notice are sophisticated and knowledgeable." *City of Boston v. James*, 26 Mass.App.Ct. 625, 530 N.E.2d 1254 (1988). Other courts have held that similar statutes are not sufficient to supplant a person's due process rights in a tax sale. *See Wylie v. Patton*, 111 Idaho 61, 720 P.2d 649 (Idaho Ct.App.1986); *United States v. Malinka*, 685 P.2d 405 (Okla.Ct.App.1984); *Alliance Property Management and Dev., Inc. v. Andrews Avenue Equities, Inc.*, 133 A.D.2d 30, 518 N.Y.S.2d 804 (N.Y.App. Div.1987); *Seattle First National Bank v. Umatilla County*, 77 Or.App. 283, 713 P.2d 33 (Or.App.1986).

Constitutional due process protection does not exist only for those who follow the notice statute but encompasses all interests that may be affected by state action. Consequently, in construing Md.Real Prop.Code Ann., § 7–105(c) in light of the holding in *Mennonite,* we conclude that § 7–105(c) is meant to protect those whose interests are difficult to identify or whose addresses are difficult to ascertain. The statute is designed to go hand in hand with constitutional protection so that no property interest will be unfairly extinguished. In this instance, Island did not receive notice solely for the reason that it had not filed a request for notice of sale. It is clear, however, that with little effort or diligence the appellees could have obtained Island's address and mailed notice to the corporation. After taking into consideration the holdings of *Mennonite* and its progeny, we believe that Section 7–105(c) protects the due process rights of those parties whose interests and addresses are not "reasonably ascertainable," by providing a mechanism through which such parties can be assured that they will receive notice. If an interest of a party is reasonably ascertainable, however, the minimum requirements of due process dictate that actual notice be given without a formal request for notice being filed. We are, therefore, remanding the within cause to the circuit court with instructions to order a resale of the subject property. Costs of resale to be charged to proceeds of sale.

JUDGMENT REVERSED.

CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.